UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X        For Online Publication Only

MAURICIO CHAVEZ,

                                        Plaintiff,          **ORDER**
                                                           15–CV–3160 (JMA)(AKT)

              against.
                                                           **FILED**
                                                           **CLERK**

MCS CLAIM SERVICES, INC,                                    3/23/2016 3:42 pm

                                        Defendant.         **U.S. DISTRICT COURT**
------------------------------------------------------------------------X        **EASTERN DISTRICT OF NEW YORK**
**AZRACK, United States District Judge:**                    **LONG ISLAND OFFICE**

       Before the Court is plaintiff's motion for default judgment against defendant MCS Claim

Services, Inc. ("MCS").  After reviewing plaintiff's motion and supporting evidence, the Court

DENIES in part and GRANTS in part the motion for default judgment.

## I. BACKGROUND

       Plaintiff filed a complaint on June 1, 2015 (the "Complaint") alleging violations of the

Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq., ("FDCPA") and New York General

Business Law § 349 ("NYGBL Section 349").  (Compl. ¶ 1, ECF No. 1.)  Plaintiff is a

"consumer" as defined by the FDCPA because he is allegedly obligated to pay a debt.  (Id. ¶ 6.)

Defendant is a debt collector as defined by the FDCPA.  (Id. ¶ 9.)

       Plaintiff's alleged debt was primarily for personal, family, or household purposes and is a

debt as defined by the FDCPA.  (Id. ¶ 10.)  On June 12, 2014, defendant sent plaintiff an initial

notice (the "Communication") in an effort to collect on the debt, which had become past due and

was transferred to defendant.  (Id. ¶¶ 11, 13.)  The Communication was a "communication" as

defined by the FDCPA.  (Id. ¶ 14.)

       In Count One of the Complaint, plaintiff alleges defendant violated 15 U.S.C. § 1692f

("Section 1692f"), which prohibits the use of unfair or unconscionable means to attempt to

collect a debt by disclosing the debtor's account number through the glassine window of an envelope that defendant sent plaintiff.  (Id. ¶¶ 16–25.)  In Count Two, plaintiff alleges defendant violated 15 U.S.C. § 1692g ("Section 1692g") by failing to clearly convey to plaintiff, under the "least sophisticated consumer" standard, that the plaintiff had thirty days upon receipt of the Communication from defendant to dispute the validity of the debt or else the debt would be assumed to be valid.  (Id. ¶¶ 26–38.)  In Count Three, plaintiff alleges defendant violated 15 U.S.C. § 1692e ("Section 1692e") because the debt collection letter was reasonably susceptible to an inaccurate reading.  (Id. ¶¶ 39–47.)  In Count Four, plaintiff alleges defendant violated NYGBL Section 349 by engaging in a material deceptive act or practice through its debt collection practices.  (Id. ¶¶ 48-59.)

In August 2015, plaintiff obtained a Clerk's entry of default against defendant and subsequently served defendant with the motion for default judgment.  (See ECF No. 11-1.)

## II. DISCUSSION

### A. Defendant Defaulted

Defendant was properly served and has not responded to the motion for default judgment.  (See ECF No. 7.)  Moreover, as a corporate defendant, MCS also defaulted by failing to obtain counsel, as corporations may not appear pro se in federal court.

### B. Liability

When a defendant defaults, the Court is required to accept all of the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009).  However, the Court also must determine whether the allegations in the complaint establish the defendant's liability as a matter of law.  Id.

Plaintiff has not sufficiently plead Count One, which alleges that defendant violated Section 1692f(8) by disclosing plaintiff's account number through the glassine window of an

envelope defendant sent to plaintiff. (Compl. ¶ 7.) Courts in this district and throughout the Second Circuit have found that, as a matter of law, the inclusion of an account number visible through an envelope's clear glassine window does not violate the FDCPA. See, e.g., Robinson v. Mun. Servs. Bureau, No. 15–CV–04832, 2015 WL 7568644, at *3 (E.D.N.Y. Nov. 24, 2015); Perez v. Global Credit & Collection, Corp., No. 14 Civ. 9413, 2015 WL 4557064, at *4 (S.D.N.Y. July 27, 2015) ("[T]his Court finds that plaintiff's account number—a string of eight meaningless digits—falls comfortably within the 'benign language' exception to § 1692f(8)"); Gelinas v. Retrieval-Masters Creditors Bureau, Inc., No. 15–CV–116, 2015 WL 4639949, at *4 (W.D.N.Y. July 22, 2015) ("[I]t cannot be said that the visibility of a series of letters and numbers above the recipient's name is capable of identifying that person as a debtor."); Gardner v. Credit Mgmt. LP, No. 14 Civ. 9414, 2015 WL 6442246, at *6 (S.D.N.Y. Oct. 23, 2015) ("A string of alphanumeric characters does not disclose anything about [plaintiff's] private affairs, nor can [plaintiff] plausibly assert that such characters would tend to mislead a debtor.").

Plaintiff has failed to allege that the account number viewable from the glassine window contained any specific identifying information or that the account number looks any different from an account identifier on "insurance policies, bank statements, subscription notices, 'or any of the other myriad junk mail communications that arrive in plain white envelopes with glassine windows on a daily basis in the mailboxes of America.'" Gardner, 2015 WL 6442246, at *6 (quoting Perez, 2015 WL 4557064, at *4). Therefore, defendant's disclosure of plaintiff's debtor account number through the glassine window of the envelope mailed to plaintiff is not a violation of the FDCPA. The Court denies plaintiff's motion for default judgment as to Count One.

Plaintiff has sufficiently plead Count Two of the Complaint, which alleges that defendant violated Section 1962g(a)(3) by failing to send plaintiff a clear and comprehensible statement

that "unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector." (Compl. ¶¶ 28–29.)   In determining whether Section 1962g has been violated, the Court will apply "an objective standard measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector." Russel v. Equifax A.R.S., 74 F.3d 30, 34 (2d Cir. 1996).   "The critical question is therefore whether the notice fails to convey the required information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to the meaning of the message." DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001) (citation omitted).

Here, the Communication stated that:

UNLESS YOU WITHIN THIRTY (30) DAYS AFTER YOUR RECEIPT OF MCS CALIM SERVICES, INC. INITIAL WRITTEN NOTICE TO YOU CONCERNING THIS DEBT, DISPUTE THE VALIDITY OF THE DEBT . . . .

(Communication, ECF No. 1-1 (emphasis in original).)   Plaintiff argues that the phrase "initial written notice to you" in the Communication "would confuse the least sophisticated consumer concerning the time frame to dispute the debt or seek validation of the debt."   (Pl.'s Mem. L. Supp. Pl. Mot. Default J. at 4 (emphasis added).)   Plaintiff maintains that the reference to "initial" in the Communication would lead the least sophisticated consumer to believe that there had been a prior written communication from defendant—the "initial written notice."   In fact, the Communication was the initial written notice sent to plaintiff.   Consequently, plaintiff's thirty day window to dispute the debt's validity only began to run upon receipt of the Communication. Therefore, plaintiff has sufficiently alleged Count Two and the Court grants plaintiff's motion for default judgment as to Count Two.

Plaintiff has sufficiently plead Count Three, which alleges that defendant violated Section 1692e by using false, deceptive, or misleading representations in connection with the collection

of a debt. (Compl. ¶ 40.) A debt collection communication violates the FDCPA when it could have two or more meanings and one of those meanings is inaccurate or misleading as judged by the standard of the least sophisticated consumer. Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996). Here, plaintiff alleges that the Communication was "reasonably susceptible to an inaccurate reading" with respect to the language regarding the deadline to dispute the debt, as discussed above relating to Count Two. (Compl. ¶¶ 43–44.) Plaintiff further alleges that the Communication was deceptive because it could have two or more different meanings, one of which is inaccurate. (Id. ¶ 42.) Therefore, plaintiff has sufficiently alleged Count Three and the Court grants plaintiff's motion for default judgment as to Count Three.

Plaintiff has sufficiently pleaded Count Four, which alleges that defendant violated NYGBL Section 349. NYGBL Section 349 bars "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service." Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000). "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." Id. Here, plaintiff alleges that defendant's deceptive acts were directed at consumers, that defendant's conduct displayed "a lack of exercise of reasonable care in [its] collection of the alleged debt" and was misleading, and that plaintiff was injured as a result. (Compl. ¶ 50.) Therefore, plaintiff has sufficiently alleged Count Four and the Court grants plaintiff's motion for default judgment as to Count Four.

## C. Damages

"[W]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d

182, 189 (2d Cir. 2015). The Court must conduct an inquiry to "ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec., Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Foundation Contractors Inc., 699 F.3d 230, 234 (2d Cir. 2012). District courts may hold an inquest by affidavit without a hearing so long as the court has "ensured that there was a basis for the damages specified in the default judgment." Transatlantic Marine, 109 F.3d at 111.

Plaintiffs who succeed on FDCPA claims are entitled to statutory damages "as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a)(2)(A). Factors to be considered by the Court include "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b)(1). "The decision whether to award statutory damages under the FDCPA and the size of the award are matters committed to the sound discretion of the district court." Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998).

Generally, courts will award the statutory maximum in cases involving egregious conduct by the defendant. Nicaisse v. Stephens & Michaels Assocs., Inc., No. 14-CV-1570, 2015 WL 9462106, at *7 (E.D.N.Y. Dec. 28, 2015). On the other hand, courts will award less than $1,000 in statutory damages "where there is no repeated pattern of intentional abuse or where the violation was technical." Mira v. Maximum Recovery Sol., Inc., No. 11-CV-1009, 2012 WL 4511623, at *3 (E.D.N.Y. Aug. 31, 2012) (report and recommendation), adopted by, 2012 WL 4581590 (E.D.N.Y. Sept. 29, 2012) (internal quotation marks and citations omitted); see, e.g.,

Savino, 164 F.3d at 86 (affirming the award of $500 in statutory damages where the notice at issue did not have a "threatening or abusive" tone).

Defendant's conduct in this matter is limited to a single statement in one communication. The tone of the communication was neither threatening nor abusive. The Court believes that any confusion created by the Communication's language described in the Second Count was at most minor and had a relatively small impact on plaintiff. Moreover, while plaintiff alleges that the debt collection letter was "reasonably susceptible to an inaccurate reading" with respect to the language in the Communication regarding the deadline to dispute the debt, the Court believes it would be rare, even for the least sophisticated consumer, to misconstrue the language in Communication. The Court will therefore award plaintiff statutory damages in the amount of $250 pursuant to 15 U.S.C. § 1692k(a)(2)(A).

**D. Attorneys' Fees**

The FDCPA authorizes successful litigants to receive "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). In the Second Circuit, reasonable fees are calculated by determining "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons v. N.Y. Trans. Auth., 575 F.3d 170, 174 (2d Cir. 2009). A reasonable fee is calculated by multiplying an attorney's reasonable hourly rate by the number of hours reasonably expended. Id.

First, the Court must determine the attorney's reasonable hourly rate. A reasonable hourly rate is the "prevailing market rate," or the rate "prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). "[T]he Court must determine a reasonable hourly rate

for the legal services performed, using factors such as the labor and skill required, the difficulty of the questions, the attorney's customary hourly rate, and the experience, reputation and ability of the attorney." Chudomel v. Dynamic Recovery Servs., Inc., No. 12–CV–5365, 2013 WL 5970613, at \*10 (E.D.N.Y. Nov. 8, 2013). Mr. Barshay and Mr. Sanders's each request an hourly rate of $575.[1] (Decl. of Craig B. Sanders in Supp. of Pl.'s Mot. for Default J., Ex. 4, Barshay Sanders, LLC Invoice for Services, ECF No. 12-4.) However, based on other similar cases in this district, the Court believes that in this case, a reasonable hourly rate is $350. See Arroyo v. Frontline Asset Strategies, LLC, No. 13–CV–195, 2013 WL 1623606, at \*2 (E.D.N.Y. Apr. 15, 2013) (approving an hourly rate of $300.00 for partner with more than twenty years of experience); Douyon v. N.Y. Med. Health Care, P.C., 49 F. Supp. 3d 328, 344 (E.D.N.Y. 2014) (reducing hourly rate to $350 per hour for an attorney with more than thirty years of practice experience, including time as law professor at New York University School of Law); LG Funding, LLC v. Florida Tilt, Inc., No. 15-CV-631, 2015 WL 5038195, at \*3 (E.D.N.Y. Aug. 26, 2015) ("In this district, more experienced attorneys, typically partners with upwards of ten years' experience, are approved for rates of $300 per hour and above."). Therefore, the Court reduces the hourly rate for Mr. Barshay and Mr. Sanders to $350 per hour.

Second, the Court must determine the number of hours the attorneys reasonably expended on the litigation. "District courts are given broad discretion to evaluate the reasonableness of the hours expended." See Konits v. Karahalis, 409 F. App'x 418, 420–12 (2d Cir. 2011). The number of reasonable hours is calculated by taking the hours actually expended less any "excessive, redundant, or otherwise unnecessary" time. Hensley v. Eckerhart, 461 U.S. 424, 433

---

[1] In his Declaration, Mr. Sanders states that his customary billing rate for the work performed in this matter is $700 per hour and he thus performed work in this case at a "discounted" rate of $575 an hour. (See Decl. of Craig B. Sanders in Support of Pl.'s Mot. for Default J. at 6, ECF No. 12.) On the other hand, the declaration states that Mr. Barshay's customary billing rate is $550 per hour, which is lower than the amount Mr. Barshay is requesting in this case. (See id.) Mr. Barshay has offered no explanation as to why his billing rate in this matter should be higher than his customary billing rate.

(1983). The party seeking attorney's fees bears the burden of supporting its claim of hours expended by accurate, detailed, and contemporaneous time records. New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

Here, plaintiff's counsel submitted an affidavit indicating that counsel spent 13 hours litigating this case. (See Barshay Sanders, LLC Invoice for Services.) Although at first glance 13 hours appears reasonable, the Court is troubled by some of the time claimed in plaintiff's fee application. Much of the work in this case could have been conducted by a less experienced associate billing at a significantly lower rate. See De La Paz v. Rubin & Rothman, LLC, No. 11 Civ. 9625, 2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013) ("Uniform percentage cutbacks are also warranted where, as here, attorneys seek to recover for time spent completing administrative tasks or work that should have been performed by lower-billing attorneys."). Also, some of the work appears to be duplicative of work conducted in other similar FDCPA cases handled by the same counsel. The Court will therefore reduce the number of hours claimed by 30 percent. The reasonable hours expended by the attorneys in this case is therefore 9.1 hours.

Based on a reasonable hourly rate of $350 and 9.1 hours reasonably expended on this litigation, the Court awards reasonable attorneys' fees of $3,185 to plaintiff's counsel.

**E. Costs**

The Court determines that reimbursement of costs of $501.05 requested by plaintiff is reasonable.

### III. CONCLUSION

After reviewing the plaintiff's motion and supporting evidence, for the reasons set forth above, the Court DENIES plaintiff's motion for default judgment as to Count One of the Complaint and GRANTS plaintiff's motion for default judgment as to Counts Two, Three, and

Four of the Complaint.  The Clerk of the Court is respectfully directed to enter judgment against

defendant MCS in the amount of $3,686.05 and close the case.


**SO ORDERED.**

Dated:  March 23, 2016
Central Islip, New York

_____/s/ (JMA)_____
JOAN M. AZRACK
UNITED STATES DISTRICT JUDGE
